# COMMERCIAL SECURITY AGREEMENT

**Group Exhibit A.**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $125,000.00 | 06-30-2010 | 06-30-2017 | 91003103 | | | 008 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:**  MAKENDY INC
1751 #248 WEST HOWARD STREET
CHICAGO, IL  60626

**Lender:**  Edgebrook Bank
Main Office
6000 W. Touhy
Chicago, IL  60646

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated June 30, 2010, is made and executed between MAKENDY INC ("Grantor") and Edgebrook Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities

Grantor owns, rents, leases, or uses; and  (4)  all other properties where Collateral is or may be located.

**Removal of the Collateral.**  Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent.  To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Illinois, without Lender's prior written consent.  Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.**  Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral.  While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business.  A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale.  Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender.  This includes security interests even if junior in right to the security interests granted under this Agreement.  Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition.  Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement.  No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented.  Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.**  Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect.  Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.**  Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.**  Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion.  If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral.  In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.  Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.**  Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity.  Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.**  Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement.  This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.**  Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require.  If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral.  If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure,  pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration.  If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor.  Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.**  Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid.  If fifteen (15) days before payment is due, the reserve

funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the

**Loan No: 91003103**

creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Illinois Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any

Case 14-32796    Doc 10-2    Filed 09/30/14    Entered 09/30/14 21:08:23    Desc Exhibit
Group Exhibit A Part 1    Page 5 of 40
**MMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 91003103                                                                                          Page 5

other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.**  Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties.  Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement.  Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.**  Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.**  Time is of the essence in the performance of this Agreement.

**Waive Jury.  All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**  The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.**  The word "Borrower" means MAKENDY INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.**  The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.**  The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.**  The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.**  The word "Grantor" means MAKENDY INC.

**Guaranty.**  The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.**  The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.**  The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.**  The word "Lender" means Edgebrook Bank, its successors and assigns.

**Note.**  The word "Note" means the Note executed by MAKENDY INC in the principal amount of $125,000.00 dated June 30, 2010, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit

COMMERCIAL SECURITY AGREEMENT
(Continued)

Loan No: 91003103                                                                                           Page 6

agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 30, 2010.

GRANTOR:

MAKENDY INC

By: _____            By: _____
    JAMES REED, Vice President of MAKENDY INC              LEONARDO G COPPOLA, President of MAKENDY
                                                           INC

LASER PRO Lending, Ver. 5.52.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2010.   All Rights Reserved.  - IL  G:\PROSUITE\CFI\LPL\E40.FC  TR-466  PR-16

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $125,000.00 | 06-30-2010 | 06-30-2017 | 91003103 | | | 008 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** MAKENDY INC
1751 #248 WEST HOWARD STREET
CHICAGO, IL 60626

**Lender:** Edgebrook Bank
Main Office
6000 W. Touhy
Chicago, IL 60646

---

**Principal Amount: $125,000.00**          **Initial Rate: 6.000%**          **Date of Note: June 30, 2010**

**PROMISE TO PAY.** MAKENDY INC ("Borrower") promises to pay to Edgebrook Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-five Thousand & 00/100 Dollars ($125,000.00), together with interest on the unpaid principal balance from June 30, 2010, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 83 regular payments of $805.72 each and one irregular last payment estimated at $107,046.33. Borrower's first payment is due July 30, 2010, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 30, 2017, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the "Money Rates" section of the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each annually . Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.000% per annum or more than (except for any higher default rate shown below) the lesser of 7.250% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: In the event of a prepayment during the next (7) seven loan years, calculated from the date of this Note, the borrower(s) shall pay a prepayment as follows: If during the 1st year 1.00% of the amount prepaid. Thereafter, Borrower(s) may prepay the Note in whole or in part without penalty for years 2-7. . Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Edgebrook Bank, 6000 W. Touhy Avenue Chicago, IL 60646.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $25.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 3.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the

commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by Assignment of Promissory Note, Mortgage and Assignment of Rents associated with the property located at 4005 West Wellington, Unit #2 - Chicago, IL 60641.

**CROSS-COLLATERAL/CROSS-DEFAULT.** THIS LOAN WILL BE CROSS-COLLATERALIZED AND CROSS-DEFAULTED WITH ALL OF BORROWER'S LOANS AT EDGEBROOK BANK.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Edgebrook Bank 6000 W. Touhy Avenue Chicago, IL 60646.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

Case 14-32796    Doc 10-2    Filed 09/30/14    Entered 09/30/14 21:08:23    Desc Exhibit
- Group Exhibit (Continued)    Page 9 of 40

Loan No: 91003103

PROMISSORY NOTE
(Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MAKENDY INC

By: _____
    JAMES REED, Vice President of MAKENDY INC

By: _____
    LEONARDO G COPPOLA, President of MAKENDY

LASER PRO Lending, Ver. 5.52.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2010.  All Rights Reserved.  - IL  G:\PROSUITE\CFI\LPL\D20.FC  TR-456  PR-15

Doc#:   1019549008 Fee: $42.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/14/2010 09:37 AM  Pg:  1 of 4

**RECORDATION REQUESTED BY:**
    Edgebrook Bank
    Main Office
    6000 W. Touhy
    Chicago, IL  60646

**WHEN RECORDED MAIL TO:**
    Edgebrook Bank
    6000 W. Touhy Avenue
    Chicago, IL  60646

**SEND TAX NOTICES TO:**
    MAKENDY INC
    1751 #248 WEST HOWARD
    STREET
    CHICAGO, IL  60626

FOR RECORDER'S USE ONLY

REPUBLIC TITLE COMPANY
1941 ROHLWING ROAD
ROLLING MEADOWS, IL 60008

This Modification of Mortgage prepared by:
    ANNA G. LES, VICE PRESIDENT
    Edgebrook Bank
    6000 W. Touhy
    Chicago, IL  60646

*accomodation*
*1 of 2*

# MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated June 30, 2010, is made and executed between MAKENDY INC (referred to below as "Grantor") and Edgebrook Bank, whose address is 6000 W. Touhy, Chicago, IL  60646 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated September 5, 2008 (the "Mortgage") which has been recorded in Cook County, State of Illinois, as follows:

MORTGAGE AND ASSIGNMENT OF RENTS DATED 09.05.2008 AND RECORDED ON 09.10.2008 IN COOK COUNTY AS DOCUMENT NUMBERS 0825435054 AND 0825435055 RESPECTIVELY.

**REAL PROPERTY DESCRIPTION.**  The Mortgage covers the following described real property located in Cook County, State of Illinois:

UNIT 4005-2 IN THE WELLINGTON AND PULASKI CONDOMINIUM AS DELINEATED AND DEFINED ON THE PLAT OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL OF REAL ESTATE:
LOTS 1 AND 2 IN BLOCK 3 IN BELMONT GARDENS, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4 OF SECTION 27, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 18, 1913 AS DOCUMENT NUMBER 5209764, IN COOK COUNTY, ILLINOIS.

WHICH SURVEY IS ATTACHED AS EXHIBIT "D" TO THE DECLARATION OF CONDOMINIUM RECORDED JANUARY 9, 2007 AS DOCUMENT NUMBER 0700915087, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

The Real Property or its address is commonly known as  4005 West Wellington, Unit #2, Chicago, IL  60641. The Real Property tax identification number is 13-27-221-029-0000.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

**Effective the date of this document following changes is hereby incorporated:**

4

# MODIFICATION OF MORTGAGE
## (Continued)

Loan No: 91003103

Page 2

1.  The date of the above referenced Mortgage and Assignment of Rents is hereby extended infinitely.

2.  The above referenced Mortgage and Assignment of Rents are hereby assigned to Makendy Inc by Edgebrook Bank.

3.  The Note Definition in hereby replaced by the following:  Note dated 06.30.2010 in the principal amount of $125,000.00 from Makendy Inc in favor of Edgebrook Bank.

**CONTINUING VALIDITY.**  Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms.   Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note").  It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.  If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS.  THIS MODIFICATION OF MORTGAGE IS DATED JUNE 30, 2010.**

GRANTOR:

MAKENDY INC

By: _____
JAMES REED, Vice President of MAKENDY INC

By: _____
LEONARDO G COPPOLA, President of MAKENDY INC

LENDER:

EDGEBROOK BANK

X _____
Authorized Signer

# MODIFICATION OF MORTGAGE
## (Continued)

Loan No: 91003103                                                                                    Page 3

## CORPORATE ACKNOWLEDGMENT

STATE OF ___Illinois___                              )
                                                      ) SS
COUNTY OF ___Cook___                                 )

On this ___30___ day of ___June___, ___2010___ before me, the undersigned Notary Public, personally appeared **JAMES REED, Vice President of MAKENDY INC and LEONARDO G COPPOLA, President of MAKENDY INC**, and known to me to be authorized agents of the corporation that executed the Modification of Mortgage and acknowledged the Modification to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Modification and in fact executed the Modification on behalf of the corporation.

By _____       Residing at ___6000 w. Touhy Ave___

Notary Public in and for the State of ___Illinois___

My commission expires ___December 5, 2010___

"OFFICIAL SEAL"
PETER SAWICKI
Notary Public, State of Illinois
My Commission Expires December 5, 2010

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 91003103

Page 4

---

## LENDER ACKNOWLEDGMENT

STATE OF _____*Illinois*_____                    )
                                                    ) SS
COUNTY OF _____*Cook*_____                        )

> **"OFFICIAL SEAL"**
> PETER SAWICKI
> Notary Public, State of Illinois
> My Commission Expires December 5, 2010

On this ____*30*____ day of ____*June*____, *2010* before me, the undersigned Notary Public, personally appeared ____*Anna Lee*____ and known to me to be the ____*V.P.*____ _____, authorized agent for **Edgebrook Bank** that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of **Edgebrook Bank**, duly authorized by **Edgebrook Bank** through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and in fact executed this said instrument on behalf of **Edgebrook Bank**.

By _____        Residing at ____*6000 w. Touhy*____

Notary Public in and for the State of ____*Illinois*____

My commission expires ____*December 5, 2010*____

LASER PRO Lending, Ver. 5.52.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2010.   All Rights Reserved.  - IL G:\PROSUITE\CFI\LPL\G201.FC  TR-466  PR-16

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $125,000.00 | 06-30-2010 | 06-30-2017 | 91003103 | | | 008 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:**  Makendy Investment Corporation, formerly
Makendy Inc
233 South Wacker Drive, 84th Floor
Chicago, IL 60606

**Lender:**  Edgebrook Bank
Main Office
6000 W. Touhy
Chicago, IL 60646



THIS COMMERCIAL SECURITY AGREEMENT dated March 4, 2011, is made and executed between Makendy Investment Corporation, formerly Makendy Inc ("Grantor") and Edgebrook Bank ("Lender").

**GRANT OF SECURITY INTEREST.**  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.**  The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.**  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.**  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.**  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.**  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.**  Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 91003103

Page 2

Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Illinois, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Illinois Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Makendy Investment Corporation, formerly Makendy Inc and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Makendy Investment Corporation, formerly Makendy Inc.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Edgebrook Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by Makendy Investment Corporation, formerly Makendy Inc in the principal amount of $125,000.00 dated March 4, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Loan No: 91003103**                                                                                          **Page 6**

substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 4, 2011.**

GRANTOR:

MAKENDY INVESTMENT CORPORATION, FORMERLY MAKENDY INC

By: _____
    JAMES REED, President of Makendy Investment
    Corporation, formerly Makendy Inc

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $125,000.00 | 06-30-2010 | 06-30-2017 | 91003103 | | | 008 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Makendy Investment Corporation, formerly Makendy Inc
233 South Wacker Drive, 84th Floor
Chicago, IL 60606

**Lender:** Edgebrook Bank
Main Office
6000 W. Touhy
Chicago, IL 60646

COPY

**Principal Amount: $125,000.00** **Initial Rate: 6.000%** **Date of Agreement: March 4, 2011**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** PROMISSORY NOTE DATED 06.30.2010 IN THE ORIGINAL AMOUNT OF $125,000.00. THE CURRENT PRINCIPAL BALANCE IS $123,702.28.

**DESCRIPTION OF COLLATERAL.** ASSIGNMENT OF PROMISSORY NOTE DATED 09.05.2008 TO GOTHAM CORPORATION, MORTGAGE AND ASSIGNMENT OF RENTS DATED 09.05.2008 ASSOCIATED WITH THE PROPERTY LOCATED AT 4005 WEST WELLINGTON, UNIT #2 - CHICAGO, IL 60641 AND RECORDED ON 09.10.2008 AS DOCUMENT NUMBERS 0825435054 & 0825435055, RESPECTIVELY; A UCC FILING ON MAKENDY INC FILED ON 07.08.2010 AS DOCUMENT NUMBER 15420472 FS FURTHER SECURED BY A COMMERCIAL SECURITY AGREEMENT GRANTED BY MAKENDY INC DATED 06.30.2010; A MODIFICATION OF MORTGAGE DATED 06.30.2010 AND RECORDED ON 07.14.2010 AS DOCUMENT NUMBER 1019549008; ASSIGNMENT OF MORTGAGE DATED 06.30.2010 AND RECORDED ON 07.14.2010 AS DOCUMENT NUMBER 1019549009.

**DESCRIPTION OF CHANGE IN TERMS.** THE PROMISSORY NOTE DATED 06.30.2010 IN THE PRINCIPAL AMOUNT OF $125,000.00 AND ALL OTHER DOCUMENTS AND AGREEMENTS EXECUTED IN CONJUNCTION THEREWITH IS HEREBY CHANGED AS AFORESAID.

THE CURRENT MATURITY DATE OF 06.30.2017 SHALL REMAIN UNCHANGED.
THE CURRENT DUE DATE OF 02.28.2011 SHALL REMAIN UNCHANGED.

THIS CHANGE IN TERMS AGREEMENT SHALL MODIFY THE CURRENT BORROWER, MAKENDY INC, TO MAKENDY INVESTMENT CORPORATION INC FORMERLY MAKENDY INC.
THIS CHANGE IN TERMS AGREEMENT SHALL ADD CLAUDIA CASCONE AS A GUARANTOR.
THIS CHANGE IN TERMS AGREEMENT SHALL ADD PROVEST REALTY SERVICES INC, A DELAWARE CORPORATION AS A GUARANTOR.
A NEW UCC WILL BE FILED UNDER MAKENDY INVESTMENT CORPORATION FORMERLY MAKENDY INC.

THIS LOAN WILL BE CROSS-COLLATERALIZED AND CROSS-DEFAULTED WITH ALL OF BORROWER'S AND GUARANTORS' LOANS AT EDGEBROOK BANK.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**PROMISE TO PAY.** **Makendy Investment Corporation, formerly Makendy Inc ("Borrower") promises to pay to Edgebrook Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-five Thousand & 00/100 Dollars ($125,000.00), together with interest on the unpaid principal balance from June 30, 2010, until paid in full.**

**PAYMENT.** **Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 83 regular payments of $805.72 each and one irregular last payment estimated at $107,046.33. Borrower's first payment is due July 30, 2010, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 30, 2017, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest.** Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the "Money Rates" section of the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each annually . Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be less than 6.000% per annum or more than (except for any higher default rate shown below) the lesser of 7.250% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** **Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.**

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment penalty: In the event of a prepayment during the next (7) seven loan years, calculated from the date of this Note, the borrower(s) shall pay a prepayment as follows: If during the 1st year 1.00% of the amount prepaid. Thereafter, Borrower(s) may prepay the Note in whole or in part without penalty for years 2-7. .** Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Edgebrook Bank, 6000 W. Touhy Avenue

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: 91003103                                                                 Page 2

Chicago, IL 60646.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $25.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by adding an additional 3.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Any guarantor or Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Borrower's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Agreement as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Agreement, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Agreement have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Assignment of Promissory Note, Mortgage and Assignment of Rents associated with the property located at 4005 West Wellington, Unit #2 - Chicago, IL 60641, Guaranty of Claudia Cascone and Corporate Guaranty of Provest Realty Services, Inc a Delaware Corporation.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 91003103                                                                                     Page 3

endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Edgebrook Bank 6000 W. Touhy Avenue Chicago, IL 60646.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

MAKENDY INVESTMENT CORPORATION, FORMERLY MAKENDY INC

By: _____

    JAMES REED, President of Makendy Investment
    Corporation, formerly Makendy Inc

LASER PRO Lending, Ver. 5.55.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2011.   All Rights Reserved   - IL  Q:\PROSUITE\CFI\LPL\D20C.FC  TR-466  PR-15



**RECORDATION REQUESTED BY:**
    Edgebrook Bank
    Main Office
    6000 W. Touhy
    Chicago, IL 60646

**WHEN RECORDED MAIL TO:**
    Edgebrook Bank
    6000 W. Touhy Avenue
    Chicago, IL 60646

**SEND TAX NOTICES TO:**
    Makendy Investment
    Corporation, formerly
    Makendy Inc
    233 South Wacker Drive, 84th
    Floor
    Chicago, IL 60606

Doc#:  1115249023 Fee: $42.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Reorder of Deeds
Date: 06/01/2011 02:59 PM Pg: 1 of 4

**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:
    **ANNA G. LES, VICE PRESIDENT**
    Edgebrook Bank
    6000 W. Touhy
    Chicago, IL 60646

REPUBLIC TITLE CO. RTC 85524 70944

# MODIFICATION OF MORTGAGE

**THIS MODIFICATION OF MORTGAGE** dated March 4, 2011, is made and executed between MAKENDY INC (referred to below as "Grantor") and Edgebrook Bank, whose address is 6000 W. Touhy, Chicago, IL 60646 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated September 5, 2008 (the "Mortgage") which has been recorded in Cook County, State of Illinois, as follows:

    MORTGAGE AND ASSIGNMENT OF RENTS DATED 09.05.2008 AND RECORDED ON 09.10.2008 IN COOK COUNTY AS DOCUMENT NUMBERS 0825435054 AND 0825435055 RESPECTIVELY AND MODIFICATION OF MORTGAGE DATED 06.30.2010 AND RECORDED ON 07.14.2010 IN COOK COUNTY AS DOCUMENT NUMBER 1019549008 IN COOK COUNTY.

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Cook County, State of Illinois:

    UNIT 4005-2 IN THE WELLINGTON AND PULASKI CONDOMINIUM AS DELINEATED AND DEFINED ON THE PLAT OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL OF REAL ESTATE:
    LOTS 1 AND 2 IN BLOCK 3 IN BELMONT GARDENS, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4 OF SECTION 27, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 18, 1913 AS DOCUMENT NUMBER 5209764, IN COOK COUNTY, ILLINOIS.

    WHICH SURVEY IS ATTACHED AS EXHIBIT "D" TO THE DECLARATION OF CONDOMINIUM RECORDED JANUARY 9, 2007 AS DOCUMENT NUMBER 0700915087, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

The Real Property or its address is commonly known as 4005 West Wellington, Unit #2, Chicago, IL 60641.

4

RECORDATION REQUESTED BY:
   Edgebrook Bank
   Main Office
   6000 W. Touhy
   Chicago, IL  60646



(given to Kelly [ Republic
for recording )

WHEN RECORDED MAIL TO:
   Edgebrook Bank
   6000 W. Touhy Avenue
   Chicago, IL  60646

SEND TAX NOTICES TO:
   Makendy Investment
   Corporation, formerly
   Makendy Inc
   233 South Wacker Drive, 84th
   Floor
   Chicago, IL  60606

**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:
   ANNA G. LES, VICE PRESIDENT
   Edgebrook Bank
   6000 W. Touhy
   Chicago, IL 60646

# MODIFICATION OF MORTGAGE

**THIS MODIFICATION OF MORTGAGE** dated March 4, 2011, is made and executed between **MAKENDY INC** (referred to below as "Grantor") and Edgebrook Bank, whose address is 6000 W. Touhy, Chicago, IL  60646 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated September 5, 2008 (the "Mortgage") which has been recorded in Cook County, State of Illinois, as follows:

MORTGAGE AND ASSIGNMENT OF RENTS DATED 09.05.2008 AND RECORDED ON 09.10.2008 IN COOK COUNTY AS DOCUMENT NUMBERS 0825435054 AND 0825435055 RESPECTIVELY AND MODIFICATION OF MORTGAGE DATED 06.30.2010 AND RECORDED ON 07.14.2010 IN COOK COUNTY AS DOCUMENT NUMBER 1019549008 IN COOK COUNTY.

**REAL PROPERTY DESCRIPTION.**  The Mortgage covers the following described real property located in Cook County, State of Illinois:

UNIT 4005-2 IN THE WELLINGTON AND PULASKI CONDOMINIUM AS DELINEATED AND DEFINED ON THE PLAT OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL OF REAL ESTATE:
LOTS 1 AND 2 IN BLOCK 3 IN BELMONT GARDENS, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4 OF SECTION 27, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 18, 1913 AS DOCUMENT NUMBER 5209764, IN COOK COUNTY, ILLINOIS.

WHICH SURVEY IS ATTACHED AS EXHIBIT "D" TO THE DECLARATION OF CONDOMINIUM RECORDED JANUARY 9, 2007 AS DOCUMENT NUMBER 0700915087, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

The Real Property or its address is commonly known as  4005 West Wellington, Unit #2, Chicago, IL  60641.

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 91003103                                                                          Page 2

The Real Property tax identification number is 13-27-221-029-0000.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage as follows:

THE GRANTOR AND BORROWER, MAKENDY INC HAB BEEN CHANGED TO MAKENDY INVESTMENT CORPORATION FORMERLY MAKENDY INC.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED MARCH 4, 2011.

**GRANTOR:**

MAKENDY INVESTMENT CORPORATION, FORMERLY MAKENDY INC

By: _____ , President

JAMES REED, President of Makendy Investment Corporation,
formerly Makendy Inc

**LENDER:**

EDGEBROOK BANK

X _____
Authorized Signer

## MODIFICATION OF MORTGAGE
### (Continued)

Loan No: 91003103                                                                    Page 3

## CORPORATE ACKNOWLEDGMENT

STATE OF _____ *IL* _____            )
                                                        ) SS
COUNTY OF _____ *Cook* _____         )

On this ____ *4th* ____ day of ____ *March* ____, *2011* ____ before me, the undersigned Notary
Public, personally appeared **JAMES REED, President of Makendy Investment Corporation, formerly Makendy Inc**
, and known to me to be an authorized agent of the corporation that executed the Modification of Mortgage
and acknowledged the Modification to be the free and voluntary act and deed of the corporation, by authority
of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on
oath stated that he or she is authorized to execute this Modification and in fact executed the Modification on
behalf of the corporation.

By _____            Residing at _____ *Brook* _____

Notary Public in and for the State of _____ *IL* _____

My commission expires _____ *4/7/13* _____

"OFFICIAL SEAL"
KELLY MARIE PAWLIK
Notary Public, State of Illinois
My Commission Expires 04/07/2013

## MODIFICATION OF MORTGAGE
**(Continued)**

Loan No: 91003103                                                                 Page 4

### LENDER ACKNOWLEDGMENT

STATE OF _____ IL _____          )
                                                   ) SS
COUNTY OF ____ Cook _____                   )

On this _____ 4TH _____ day of ____ March _____, 2011 before me, the undersigned Notary Public, personally appeared _____ Anna Les _____ and known to me to be the Vice President _____, authorized agent for **Edgebrook Bank** that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of **Edgebrook Bank**, duly authorized by **Edgebrook Bank** through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and in fact executed this said instrument on behalf of **Edgebrook Bank**.

By _____          Residing at _____ Cook _____

Notary Public in and for the State of ____ IL _____

My commission expires _____ 4/7/13 _____

> "OFFICIAL SEAL"
> KELLY MARIE PAWLIK
> Notary Public, State of Illinois
> My Commission Expires 04/—— 2013

LASER PRO Lending, Ver. 5.55.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2011.   All Rights Reserved.  - IL  G:\PROSUITE\CFI\LPL\G201.FC  TR-466  PR-16

# NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

| | | | |
|---|---|---|---|
| **Borrower:** | MAKENDY INC<br>1751 #248 WEST HOWARD STREET<br>CHICAGO, IL 60626 | **Lender:** | Edgebrook Bank<br>Main Office<br>6000 W. Touhy<br>Chicago, IL 60646 |
| **Grantor:** | MAKENDY INC | | |

At Edgebrook Bank, we recognize the sensitive nature of your personal financial information and take every precaution to protect your privacy. When you entrust us with your financial information, you can be certain it will be used only within our strict guidelines.

We have prepared this brochure to explain what types of information we collect, how we use it, and under what circumstances we may share it. We, our, and us, when used in this notice, means all the members of Edgebrook Bank.

This is our privacy notice for our customers. When we use the words "you" and "your" we mean all of our customers who have or have had a relationship with us.

In this communication, we will inform you of the sources of nonpublic personal information we collect on our customers. We will tell you what measures we take to secure that information. We will also communicate what information we share with other entities. We will explain what your rights are, and how you can exercise them.

We hope you will read through all of the details of our official position on privacy. At the very least, however, we want you to know that we use information we know about you responsibly to provide you with the services you have requested, offer you other bank products and services, and alert you to financial service products made available by our carefully selected marketing partners.

This policy statement takes precedence over any previous privacy policies issued by us. We wish first to define some terms:

- **Non-public personal information** means information about you that we collect in connection with providing a financial product or service to you. Non-public personal information does not include information that is available from public sources, such as telephone directories or government records.

- An **affiliate** is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.

- A **non-affiliated third party** is a company that is not an affiliate of ours.

## WHAT KINDS OF INFORMATION WE COLLECT

We collect non-public personal information about you from the following sources: information we receive from you on applications or other forms, information about your transactions with us, information about your transactions with non-affiliated third parties, and information from consumer reporting agencies.

- Information we receive from you on applications or other forms
- Information about your transactions with us, our affiliates, or others
- Information we receive from a consumer reporting agency

## HOW WE USE THIS INFORMATION

Most of the information we collect is used for only one purpose, to help us deliver the services that you have requested easily and efficiently. It may also permit us to design and offer specific products and services that we believe will be useful to you.

## THE CONFIDENTIALITY, SECURITY AND INTEGRITY OF YOUR NON-PUBLIC PERSONAL INFORMATION

We restrict access to non-public personal information about you to those employees that need to know the information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your non-public personal information.

## NON-PUBLIC PERSONAL INFORMATION AND NON-AFFILIATED THIRD PARTIES

We may disclose non-public personal information about you to non-affiliated third parties as permitted by law. This may include financial service providers (such as insurance agents), among others.

We may also disclose the following information to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements:

- Information we receive from you on applications or other forms, such as your name, address, social security number, assets and income;
- Information about your transaction with us, our affiliates, or others, such as your account balance, payment history, and credit card usage, and
- Information we receive from a consumer reporting agency, such as your creditworthiness and credit history.

These third parties include:

- Services providers who assist us in managing your relationship with us such as check printers, data processing companies, companies that prepare our account statements, or companies that helps us market our products to you;
- Companies with whom we have a joint marketing agreement to provide you with financial services that we do not offer ourselves, but we believe may be of interest to you. For example, we may share information with financial service providers that offer credit cards, insurance products, annuities, stock or mutual funds;
- Other parties as permitted or required by applicable law. These include government agencies in response to subpoenas and other legal processes, consumer reporting agencies, or those with whom you have authorized us to share your information.

These companies are legally obligated to keep information we provide them confidential and are restricted from using this information for any reason beyond the performance of the specified service on our behalf or as specified in our joint marketing agreement. Please be advised that under the federal Gramm-Leach-Bliley Act, you do not have the right to opt out from the sharing of information with third party service providers and joint marketers.

## NON-PUBLIC PERSONAL INFORMATION AND AFFILIATES

The Fair Credit Reporting Act and other laws allow us to share specific details with our affiliates about your transactions and experiences with

**NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS**
**(Continued)**

Loan No: 91003103                      Page 2

us, including information about your account balances or payment history.

**NON- PUBLIC PERSONAL INFORMATION AFTER YOU TERMINATE YOUR RELATIONSHIP WITH US.**
Although we generally do not solicit customers who have closed their accounts with us, we may share their information with Edgebrook Bank affiliates and non-affiliated third parties as described above. We may also disclose non-public personal information about former customers, except as prohibited by law.

As always, we thank you for choosing Edgebrook Bank.

LASER PRO Lending, Ver. 5.52.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - IL Q:\PROSUITE\CFI\LPL\PRIVDISC.FC TR-486 PR-18

Form **W-9**
(Rev. October 2007)

Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

**Print or type**

**See Specific Instructions on page 2.**

Name (as shown on your income tax return)

Business name, if different from above

MAKENDY INC

Check appropriate box: ☐ Individual/Sole proprietor  ☒ Corporation  ☐ Partnership

☐ Limited liability company. Enter the tax classification (D = disregarded entity, C = Corporation, P = Partnership) ▶ _ _ _ _ _ _

☐ Other (see instructions) ▶ ------------------------------

☐ Exempt payee

Address (number, street, and apt. or suite no.)

1751 #248 WEST HOWARD STREET

City, state, and ZIP code

CHICAGO, IL 60626

Requester's name and address (optional)

**Edgebrook Bank**
**Main Office**
**6000 W. Touhy**
**Chicago, IL  60646**

List account number(s) here (optional)

---

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to Get a TIN on page 3.

**Note:** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

| Social security number |
|---|
| |

**or**

| Employer identification number |
|---|
| 36-4431728 |

---

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**   Signature of U.S. person ▶   Date ▶ 6 30 2010

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

   1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

   2. Certify that you are not subject to backup withholding, or

   3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note:** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

   ● An individual who is a U.S. citizen or U.S. resident alien,

   ● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

   ● An estate (other than a foreign estate), or

   ● A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

   ● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 10-2007)

**Edgebrook Bank**
6000 West Touhy – Chicago, IL 60646

# Memo

**To:**    **Monique Croon, Republic Title**

**From:**  **Anna G. Les**

**CC:**    **Loan File #91003103**

**Date:**  **07.07.2010**

**Re:**    **Accommodation Recordation**

---

Attached you will find an original Modification of Mortgage, 4 pages, in regards to the property located at 4005 West Wellington, Unit #2, Chicago, IL 60641 and an Assignment of Mortgage, 2 pages.

As an accommodation to Edgebrook Bank, please record the enclosed document and return the original to bank.

Enclosed is a check payable to Republic Title in the amount of $100.00.

Please contact me directly if you should have any questions.


Sincerely,
Anna G. Les, Vice President

1

RECORDATION REQUESTED BY:
  Edgebrook Bank
  Main Office
  6000 W. Touhy
  Chicago, IL  60646


WHEN RECORDED MAIL TO:
  Edgebrook Bank
  6000 W. Touhy Avenue
  Chicago, IL  60646


SEND TAX NOTICES TO:
  MAKENDY INC
  1751 #248 WEST HOWARD
  STREET
  CHICAGO, IL  60626

REPUBLIC TITLE COMPANY
1941 ROHLWING ROAD
ROLLING MEADOWS, IL 60008

Doc#:   1019549009 Fee: $38.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/14/2010 09:37 AM  Pg: 1 of 2

**FOR RECORDER'S USE ONLY**

This Assignment of Mortgage prepared by:
  ANNA G. LES, VICE PRESIDENT
  Edgebrook Bank
  6000 W. Touhy
  Chicago, IL  60646

*accomodation*
*2 of 2*

## ASSIGNMENT OF MORTGAGE

THIS ASSIGNMENT OF MORTGAGE dated June 30, 2010, is made and executed between MAKENDY INC
(referred to below as "Assignor") and Edgebrook Bank, whose address is 6000 W. Touhy, Chicago, IL  60646
(referred to below as "Assignee").

**MORTGAGE.**  MAKENDY INC, the Mortgagor, executed and delivered to Edgebrook Bank, the Mortgagee, a
Mortgage dated September 5, 2008 (the "Mortgage") which has been recorded in Cook County, State of
Illinois, as follows:

  **MORTGAGE AND ASSIGNMENT OF RENTS DATED 09.05.2008 AND RECORDED ON 09.10.2008 IN
  COOK COUNTY AS DOCUMENT NUMBERS 0825435054 AND 0825435055 RESPECTIVELY.**

**REAL PROPERTY DESCRIPTION.**  The Mortgage covers the following described real property located in Cook
County, State of Illinois:

  UNIT 4005-2 IN THE WELLINGTON AND PULASKI CONDOMINIUM AS DELINEATED AND DEFINED ON
  THE PLAT OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL OF REAL ESTATE:
  LOTS 1 AND 2 IN BLOCK 3 IN BELMONT GARDENS, BEING A SUBDIVISION OF PART OF THE
  NORTHEAST 1/4 OF SECTION 27, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
  MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 18, 1913 AS DOCUMENT NUMBER
  5209764, IN COOK COUNTY, ILLINOIS.

  WHICH SURVEY IS ATTACHED AS EXHIBIT "D" TO THE DECLARATION OF CONDOMINIUM RECORDED
  JANUARY 9, 2007 AS DOCUMENT NUMBER 0700915087, AS AMENDED FROM TIME TO TIME,
  TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

The Real Property or its address is commonly known as  4005 West Wellington, Unit #2, Chicago, IL  60641.
The Real Property tax identification number is 13-27-221-029-0000.

**ASSIGNMENT OF MORTGAGE.**  For valuable consideration, Assignor hereby assigns and conveys to Assignee
all of Assignor's right, title, and interest in and to the above described Mortgage, together with all of

# ASSIGNMENT OF MORTGAGE
## (Continued)

**Loan No: 91003103**                                                                 Page 2

Assignor's right, title and interest in and to the promissory note or notes (or other credit agreements) secured by the Mortgage.


**ASSIGNOR:**


MAKENDY INC

By: _____
   JAMES REED, Vice President of MAKENDY INC

By: _____
   LEONARDO G COPPOLA, President of MAKENDY INC

---

## CORPORATE ACKNOWLEDGMENT


STATE OF ___Illinois___                                )
                                                       ) SS
COUNTY OF ___Cook___                                   )


On this ___20___ day of ___June___, ___2010___ before me, the undersigned Notary Public, personally appeared **JAMES REED, Vice President of MAKENDY INC and LEONARDO G COPPOLA, President of MAKENDY INC** , and known to me to be authorized agents of the corporation that executed the Assignment of Mortgage and acknowledged the Assignment to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Assignment and in fact executed the Assignment on behalf of the corporation.

By _____          Residing at ___6000 W. Cudy Ave___

Notary Public in and for the State of ___Illinois___

My commission expires ___December 5, 2010___

"OFFICIAL SEAL"
PETER SAWICKI
Notary Public, State of Illinois
My Commission Expires December 5, 2010

---

LASER PRO Lending, Ver. 5.52.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2010.   All Rights Reserved.  - IL G:\PROSUITE\CFI\LPL\G204.FC TR-466 PR-16



RECORDATION REQUESTED AND
PREPARED BY:

BELONGIA, SHAPIRO &
FRANKLIN, LLP
Attn: Mark D. Belongia
20 South Clark Street, Suite 300
Chicago, Illinois 60603



Doc#:  1028805072 Fee: $42.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 10/15/2010 11:41 AM Pg: 1 of 4

*accomodation*
*1 of 1*

## ASSIGNMENT OF PROMISSORY NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS; AND MODIFICATION OF PREVIOUSLY RECORDED DOCUMENT

Assignor(s):   EDGEBROOK BANK          Assignee:   MAKENDY INC.
6000 West Touhy Avenue                             1751 West Howard St., # 248
Chicago, Illinois 60646                            Chicago, Illinois 60626

### (I)   ASSIGNMENT OF PROMISSORY NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS

EDGEBROOK BANK, with its principal place of business at 6000 W. Touhy, Chicago, Illinois 60646 ("Assignor"), for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns to MAKENDY INC. ("Assignee"), all of Assignor's right, title and interest in and to: (i) the Mortgage dated September 5, 2008 made by Gotham Corporation on the property located at 4005 West Wellington, Unit #2, Chicago, Illinois 60641 (and legally described on Exhibit "A" attached hereto), and recorded on September 10, 2008 as <u>document number 0825435054</u> with the Cook County Recorder of Deeds Office ("Mortgage"); (ii) the Promissory Note in the original principal amount of $139,830.00 dated September 5, 2008 made by Gotham Corporation payable to the order of Assignor secured thereby; (iii) the Assignment of Rents dated September 5, 2008 made by Gotham Corporation and recorded on September 10, 2008 as <u>document number 0825435055</u> with the Cook County Recorder of Deeds; and (iv) any and all additional related loan documents made by Gotham Corporation to Assignor (collectively the "Loan Documents").

*Assignor's Representations and Warranties*: Assignor represents and warrants that: (a) Assignor is the owner and holder of the Loan Documents hereinabove described; and (b) Assignor has full power and authority to execute this Assignment.

*Assignment as Collateral*: Assignee hereby acknowledges that all right, title and interest in and to the Loan Documents as assigned from Assignor to Assignee as contemplated in this Assignment shall serve as collateral and thereby secure that certain promissory note in the original principal amount of $125,000 dated June 30, 2010, made by Assignee payable to the order of Assignor.

*Reversion Upon Default by Assignee*: Upon a default by Assignee under the promissory note described above and made by Assignee payable to Assignor dated June 30, 2010; all right, title and interest in and to the



Loan Documents as assigned from Assignor to Assignee as contemplated in this Assignment shall revert back to Assignor and, at the sole option of Assignor, this Assignment shall become null and void.

### (II)    MODIFICATION OF PREVIOUSLY RECORDED DOCUMENT

On June 30, 2010, Assignee made to Assignor a certain Modification of Mortgage on the property located at 4005 West Wellington, Unit #2, Chicago, Illinois 60641 (and legally described on Exhibit "A" attached hereto), and recorded on July 14, 2010 as document number 1019549008 with the Cook County Recorder of Deeds Office ("Modification").

Said Modification sought to modify and amend the Mortgage dated September 5, 2008 between Gotham Corporation and Assignor and recorded as document number 0825435054. By this document, Assignee and Assignor acknowledge and hereby declare that the Modification recorded as document number 1019549008 is deficient on its face and thus null and void.

The Mortgage dated September 5, 2008 between Gotham Corporation and Assignor and recorded as document number 0825435054 is thus solely modified by this Assignment and not by the prior Modification referred to above.

*[SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, Edgebrook Bank and Makendy Inc. have duly executed this Assignment and Modification on this **30TH** day of **JUNE**, 2010.

**ASSIGNOR:**
Edgebrook Bank

X _____

By: 

Its:

**ASSIGNEE:**
Makendy Inc.

X _____

By: James Reed

Its: President

## INDIVIDUAL ACKNOWLEDGEMENT

STATE OF ILLINOIS )
COUNTY OF COOK )

I, the undersigned, a notary public in and for the county and state above, do hereby certify that the individuals stated above and executing this document, being known to me to be the same persons whose names are subscribed to the above instrument, who proved to my satisfaction that they are the persons described in and who executed the foregoing instrument, appeared before me this day in person and acknowledged that they signed and delivered the instrument, as their free and voluntary act, for the uses and purposes stated above.

Given under my hand and notarial seal this __15__ day of __September__ 2010.

_____
Notary Public

> "OFFICIAL SEAL"
> PETER SAWICKI
> Notary Public, State of Illinois
> My Commission Expires December 5, 2010

**Property Address:**      4005 W. WELLINGTON, UNIT 2,
CHICAGO IL 60641

**Legal Description:**

UNIT 4005-2 IN THE WELLINGTON AND PULASKI CONDOMINIUM AS DELINEATED AND DEFINED ON THE PLAT
OF SURVEY OF THE FOLLOWING DESCRIBED PARCEL OF REAL ESTATE:

LOTS 1 AND 2 IN BLOCK 3 IN BELMONT GARDENS, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4
OF SECTION 27, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING
TO THE PLAT THEREOF RECORDED JUNE 18, 1913 AS DOCUMENT NUMBER 5209764, IN COOK COUNTY,
ILLINOIS.

WHICH SURVEY IS ATTACHED AS EXHIBIT "D" TO THE DECLARATION OF CONDOMINIUM RECORDED
JANUARY 9, 2007 AS DOCUMENT NUMBER 0700915087, AS AMENDED FROM TIME TO TIME, TOGETHER WITH
ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

**Permanent Index No.:**      13-27-221-029.

ALTA Commitment                                                                                                  RTC70944

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $139,830.00 | 09-05-2008 | 09-05-2009 | **91001903 | 1C2A / 130 | | 008 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Gotham Corporation
6171 North Sheridan Road, #1211
Chicago , IL  60660

**Lender:**  Edgebrook Bank
Main Office
6000 W. Touhy
Chicago, IL  60646

**Principal Amount: $139,830.00**          **Interest Rate: 6.750%**          **Date of Note: September 5, 2008**

**PROMISE TO PAY.** Gotham Corporation  ("Borrower") promises to pay to Edgebrook Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thirty-nine Thousand Eight Hundred Thirty & 00/100 Dollars ($139,830.00), together with interest at the rate of 6.750% per annum on the unpaid principal balance from September 5, 2008, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of $139,830.00 plus interest on September 5, 2009. This payment due on September 5, 2009, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 5, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $50.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Edgebrook Bank, 6000 W. Touhy Avenue Chicago, IL  60646.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 3.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest

**PROMISSORY NOTE**
**(Continued)**

Loan No: 91001903                                                                                                    Page 2

---

immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by Mortgage and Assignment of Rents from Gotham Corporation, an Illinois Corporation encumbering real property commonly known as 4005 West Wellington, Unit #2, Chicago IL; further secured by Personal Guaranties of George Somer, Donna F. Vannett, and John Fitzgerald. .

**CROSS- COLLATERALIZATION AND CROSS-DEFAULT .** This Note Mortgage Assignment of Rents, and other supporting documents secure all obligations, debts, liabilities, plus interest thereon of either the Borrower and/or Grantor, as well as all claims by Lender against Borrower or Grantor. Whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note or any other, whether voluntary or involuntary, whether due now or due in the future, determined or undetermined. Borrower and Grantor may be liable together, individually or with others, whether obligated as grantor or borrower, surety, accommodating party. Grantor presently assigns to Lender Grantor's rights, title, and interest in and to all    present and future leases of the subject property and all rents from the property. Further Grantor grants to lender all Uniform Commercial Security interest in the personal property and Rents. .

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Edgebrook Bank 6000 W. Touhy Avenue Chicago, IL 60646.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 91001903                                                                                                Page 3

---

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GOTHAM CORPORATION

By: _____                         By: _____
John E. Fitzgerald Jr., President/Secretary    of          Donna F.   Van Nett, Vice President/ Treasurer   of
Gotham Corporation                                         Gotham Corporation

By: _____                         **©COPY**
George M. Somer , Director of Gotham Corporation

LASER PRO Lending, Ver. 5.39.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - IL  G:\PROSUITE\CFI\LPL\D20.FC  TR-214  PR-18